# EXHIBIT 5

FILED
2019-DCL-01876
3/26/2019 6:36 PM
Eric Garza
Cameron County District Clerk
By Viviana Fuentes Deputy Clerk
32262171

CAUSE NO. 2019-DCL-01876

| | | |
|---|---|---|
| L.C. and D.S., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | CAMERON COUNTY, TEXAS |
| ROMAN CATHOLIC DIOCESE OF BROWNSVILLE, | § | Cameron County - 445th District Court |
| | § | |
| Defendant. | § | ____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiffs, L.C. and D.S., sue Defendant the Roman Catholic Diocese of Brownsville ("Diocese"), by and through Bishop Daniel E. Flores, his predecessors and successors, as Bishop of the Roman Catholic Diocese of Brownsville, for damages related to their sexual abuse as minor children.

## PARTIES

1. Plaintiff L.C. is an individual and Texas resident who resides in Cameron County, Texas. The Diocese knows L.C.'s full identity.

2. Plaintiff D.S. is an individual and Texas resident who resides in Cameron County, Texas. The Diocese knows D.S.'s full identity.

3. Defendant, Roman Catholic Diocese of Brownsville ("the Diocese") is a general partnership or other unincorporated association, under Texas law, which operates in Cameron County Texas. The Diocese has its principal office at 1910 University Blvd. Brownsville, TX 78520.

4. Plaintiffs sue the Diocese in all its assumed and common names under Rule 28, including the name "Roman Catholic Diocese of Brownsville, by and through Daniel E. Flores, his predecessors and successors as Bishop of the Roman Catholic Diocese," which is intended to cover the Bishop in

all but his individual capacity, including his capacity, if any, as a corporation sole or a trustee for the Diocese or any parish or other Catholic entity located within the Diocese's geographic boundaries. Regardless of its classification under Roman Catholic Canon Law, the Diocese is a general partnership or unincorporated association or unincorporated religious organization, under Texas law, which is located and operated in Brownsville, Cameron County, Texas.

## DISCOVERY CONTROL PLAN LEVEL

5.      Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, discovery is intended to be conducted under Level 3 as set forth in Rule 190.4. As required by Rule 47 (b), Texas Rules of Civil Procedure, Plaintiffs' counsel states that the damages sought are in an amount within the jurisdictional limits of this court. As required by Rule 47 (c), Texas Rules of Civil Procedure, Plaintiffs' counsel states that Plaintiffs seek monetary relief in a sum over $1,000,000. The amount of monetary relief actually awarded, however, will ultimately be determined by a jury. Plaintiffs also seek costs of court, and prejudgment and post judgment interest at the highest legal rate.

## JURISDICTION AND VENUE

6.      Plaintiffs seeks compensatory and exemplary damages on their claims for assault, negligence, negligent hiring, negligent supervision, negligent retention, premises liability, intentional infliction of emotional distress, statutory malice, aiding and abetting, fraud, and good-samaritan liability. These claims fall within this Court's general subject-matter jurisdiction. All conditions precedent to bringing suit have occurred.

7.      Pursuant to Texas Civil Practice and Remedies Code §15.002(a), Venue is proper in this county, because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Cameron County, Texas and because the principal office of the Diocese is located in Cameron County, Texas.

## STATEMENT OF FACTS

8. The Diocese is composed of at least 71 parishes in Brownsville, Texas and other nearby counties. Our Lady of Guadalupe is one such parish.

9. In 1982, Father Benedicto Ortiz ("Ortiz") was a priest at Our Lady of Guadalupe where Plaintiffs attended church. Starting in or around 1982, Ortiz would have Plaintiffs spend the night with him, and eventually moved the children into the rectory with him. Plaintiffs would visit their mother twice a week, and the mother was grateful believing that they were in a safe and protected environment. Plaintiffs' mother relied on the Diocese to provide a safe and nurturing environment for her children, to protect them from abuse and harm, and to keep them from being exposed to anyone harmful.

10. From in or around 1982 until 1985, Ortiz sexually abused and molested Plaintiffs at Our Lady of Guadalupe and in his rectory. His abuse included exposing himself to the children, requiring them to be naked in his presence, fondling them, requiring them to touch him, and engaging in oral sex, providing Plaintiffs with drugs and alcohol, playing pornographic videos, and masturbating in front of them.

11. During this time, the Bishop Fitzpatrick transferred Ortiz from Our Lady of Guadalupe to a different parish, St. Anne Mother of Mary in Pharr, Texas ("St. Anne"). Plaintiffs moved with Ortiz to St. Anne, where the abuse continued.

12. Plaintiffs lived with Ortiz for approximately three years when Former Bishop Fitzpatrick directed that Ortiz could not continue to have Plaintiffs live with him.

13. Ortiz would also take Plaintiffs on trips to Padre Island, where Ortiz would give them alcohol and marijuana, have them watch pornographic videos, and masturbate in front of them.

14. The Diocese failed to protect the children from Ortiz.

15. The priests, bishops, and staff members failed to properly supervise and monitor the children and Ortiz was often alone and unsupervised with children.

16. Ortiz exploited these opportunities to molest children. Several staff members, priests, and at least Bishop Fitzpatrick knew that Plaintiffs were living with Ortiz.

17. Priests, Bishops, and staff members also ignored warning signs. For example, although Bishop Fitzpatrick ordered that Plaintiffs stop living with Ortiz, Ortiz continued to take unsupervised trips with Plaintiffs and spend time with them alone.

18. Plaintiffs were raised as a devout Roman Catholics. Plaintiffs attended Catholic Church and Mass regularly and received Holy Communion and the Sacraments regularly, and received Holy Confirmation by the Catholic Church. Plaintiffs were taught and always believed in the teachings of the Roman Catholic Church and developed a great trust, confidence, reverence, respect, and obedience to and in the Catholic Church, its institutions, and its Holy Fathers, including its Catholic priests. Plaintiffs were taught and believed that Catholic priests were honorable and trustworthy, always right, and would always act in their best interests. Plaintiffs were taught and believed that Catholic priests were God's representatives here on Earth, next in line to God, and trusted, obeyed, loved, and respected them unconditionally, as they did God. As devout and loyal Catholics, Plaintiffs trusted that Defendant, as an institution of the Roman Catholic Church, and its servants and representatives, would act in their best interests and warn them of any known danger, which included its priest, Ortiz. Plaintiffs and their family relied on and trusted the Catholic Church, its institutions, its priests, including this Defendant, to provide moral and spiritual guidance and counseling and to assist them in training and educating their Catholic children, to protect them from known physical and moral harm, and to always act in their best interests at all times. Plaintiffs' family entrusted the Catholic Church with their minor Catholic children.

## CAUSES OF ACTION AGAINST THE
## ROMAN CATHOLIC DIOCESE OF BROWNSVILLE

19. At all times material herein, Ortiz was employed as a priest with Defendant and was under Defendant's direct supervision and control when he sexually abused minors, including Plaintiffs. As an ordained priest, Ortiz acted upon delegated authority of the Defendant as its agent, representative, and/or employee. Ortiz came to know minors, including Plaintiff, and her family, and gained access to them because of his status as a Roman Catholic Priest. Ortiz engaged in this wrongful conduct while in the course and scope of his employment with Defendant. Therefore, Defendant is liable for the wrongful conduct committed by Ortiz. Plaintiff, therefore, pleads *Respondeat Superior*, agency, apparent agency, agency by estoppel, and ratification.

20. Defendant negligently selected, hired, trained, and/or continued the employment and service of Ortiz in a position of trust, confidence, and authority, as a parish priest, when it knew or should have known of his dangerous sexual propensities. Defendant's actions and inactions, in light of what it knew as to his past, allowed Ortiz to continually reach and have contact with minor children, including Plaintiffs, for years, to abuse and molest them.

21. Defendant failed to warn Plaintiffs of Ortiz's dangerous sexual propensities toward minors, and nevertheless, allowed him to continually have contact with minor children, including Plaintiffs, for years to abuse and molest them.

22. Defendant failed to provide reasonable supervision of Ortiz while he worked or served as a priest at parishes within the Diocese.

23. Defendant, as a religious organization, is granted special privileges and immunities by society and is in a special fiduciary relationship with Plaintiffs. Defendant owed Plaintiffs the highest duty of trust and confidence and was required to act in Plaintiffs best interest. Defendant knowingly violated that relationship. Defendant knowingly breached Plaintiffs trust when it failed to act with

the highest degree of trust and confidence to protect Plaintiffs from its sexually predatory priest. This knowing breach of fiduciary duty proximately caused injury to Plaintiffs.

24. Defendant also committed fraud by non-disclosure and misrepresentation that proximately caused Plaintiffs damages. Defendant committed fraud when it represented that Ortiz was a sexually safe, celibate priest, when it knew or should have known of his dangerous sexual predatory tendencies.

25. Defendant, at the time and on the occasions in question, acted with heedless and reckless disregard of the safety of Plaintiffs, which disregard was the result of conscious indifference to the rights, welfare, and safety of Plaintiffs in violation of the laws of the State of Texas.

26. Defendant had repeated notice of sexual abuse of children by Roman Catholic priests, clergy, members, employees, staff, and/or representatives, and nevertheless employed them, including Ortiz, and/or permitted them to serve, or continue to serve, and allowed them unrestricted and unsupervised access to minor children like Plaintiffs, which permitted them, including Ortiz, to repeatedly engage in sexual abuse and/or inappropriate sexual conduct or acts with minors, including Plaintiffs, which proximately caused Plaintiffs harm and/or damages.

27. Plaintiffs allege that Defendant and others unknown to Plaintiffs, acting in concert, engaged in a plan of action to cover up the incidents of priests' sexual abuse of minors and prevent disclosure, prosecution, and civil litigation including, but not limited to, denial of abuse, spoliation of evidence, transfers and reassignments of abusive priests, religious duress and coercion, failure to seek out and assist victims, breach of trust and confidence.

28. Plaintiffs alleges that the actions of this Defendant have inflicted emotional distress upon Plaintiffs.

29. Plaintiffs assert that Defendant is liable for acts and/or omissions pursuant to the RESTATEMENT (SECOND) OF TORTS, Section 302B, under the legal doctrine of negligent

assumption of risk of intentional or criminal conduct

30. An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal. RESTATEMENT (SECOND) OF TORTS, Section 302B.

31. Defendant realized or should have realized that Ortiz posed an unreasonable risk of harm to adult and minor parishioners, including Plaintiffs.

32. Plaintiffs assert that Defendant is liable for acts and/or omissions pursuant to the RESTATEMENT (SECOND) OF TORTS, Section 311, under the legal doctrine of negligent misrepresentation involving risk of physical harm.

33. One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results:

    a. to the other, or

    b. to such third persons as the actor should expect to be put in peril by the action taken.

34. Such negligence may consist of failure to exercise reasonable care:

    c. in ascertaining the accuracy of the information, or

    d. in the manner in which it is communicated. RESTATEMENT (SECOND) OF TORTS, Section 311.

35. Plaintiffs asserts that Defendant is liable for acts and/or omissions pursuant to the RESTATEMENT (SECOND) OF TORTS, Section 317, under the legal doctrine that imposes a duty upon employers to exercise reasonable care in controlling employees to prevent them from intentionally harming others when:

    e. the servant

    i. is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

    ii. is using a chattel of the master, and

  f. the master

    i. knows or has reason to know that he has the ability to control his servant, and

    ii. knows or should know of the necessity and opportunity for exercising such control. RESTATEMENT (SECOND) OF TORTS, Section 317 at 125 (1965).

36. Defendant's failure to ascertain and apprise Plaintiffs and their family of Ortiz's sexually predatory nature and their representation that Ortiz was not sexually dangerous to minor parishioners placed Plaintiffs in danger and peril.

37. Plaintiffs alleges that the negligence of Defendant resulted in bodily injury to Plaintiffs.

38. Defendant is further liable to Plaintiffs for premises liability. Plaintiffs were invitees on Defendant's premises, and it owed a duty of care to those who may be harmed by criminal acts on its premises when the risk of criminal conduct is so great that it is both unreasonable and foreseeable. Defendant was aware of criminal acts of assault by Ortiz to minors on its property and breached its duty of care to Plaintiffs.

39. Defendant failed to properly report, investigate, and/or otherwise take appropriate action to prevent or address the abuses in question, including contacting the authorities and/or law enforcement personnel or agencies and removing Johnson, permanently, after learning, long before he sexually abused Plaintiffs, that Ortiz was acting contrary to his vow of celibacy and was behaving sexually inappropriately with minors. Defendant knew of Ortiz's dangerous sexual propensities towards others and his inability to be safely left alone with others, and nevertheless, failed to discontinue his employment or service and allowed him to have unsupervised and unrestricted access

to minor children, including Plaintiffs. Defendant failed to properly train, educate, and/or supervise its Roman Catholic priests, clergy, employees, staff, monks, and/or representatives, including Ortiz, to prevent and properly respond to inappropriate sexual behavior and abuse of minor children. Defendant's conduct, through their officers, employees, representatives, and/or agents, at a minimum, constituted negligence, by act or omission, each and all of which were a proximate cause of the sexual abuses in question and Plaintiffs harm or damages resulting from the sexual abuses in question.

## **CLAIMS OF CONSPIRACY**

40.     Defendant herein and parties outside the Church entered into a civil conspiracy, accompanied by a meeting of the minds regarding concerted action, the purposes of which were to suppress and minimize public knowledge of the widespread sexual abuse of minors by Catholic Priests and to take a uniform position and approach to the handling of reports of abuse. This uniform position and approach was designed to avoid prosecution of clergy offenders, prevent or minimize claims for damages, avoid public exposure of the sexual abuse of children by Catholic Priests, protect the reputation of the Catholic Church from scandal, and thus ensure the continued financial contributions of the Catholic laity. This conspiracy included spoliation of evidence.

41.     This conspiracy and concert of action was carried out by Defendant to conceal and fraudulently conceal the fact that Defendant committed acts of negligence, gross negligence, fraud, and breach of fiduciary duty, and has engaged in concerted action to commit acts of negligence, gross negligence, fraud, and breach of fiduciary duty.

42.     In the absence of this conspiracy and concert of action, Defendant would have responded to repeated notice of the abuse of children by Roman Catholic priests and issued general and specific warnings to the laity. Had a proper warning been issued, Ortiz would never have had unsupervised access to Plaintiffs and this abuse and exploitation would never have occurred. Thus, Defendant's

actions in furtherance of this conspiracy are a proximate cause of the injury and damages claimed herein.

43.     Defendant engaged in a conspiracy to conceal the sexual and mental problems of Ortiz and the sexual abuse of other children by other priests, including, priests of the Defendant Roman Catholic Diocese of Brownsville. Defendant advanced the purposes of this conspiracy by failing to study, to disclose, and/or to warn of the dangers of child sexual abuse by Catholic priests despite notice and knowledge of the risk dating back many decades, and by failing to promulgate proper policies for admission to the Seminary and for supervision of its priests.

44.     Plaintiff alleges that officials of the Defendant, with others, acting in concert, engaged in a conspiracy to avoid the prosecution of Ortiz and to cover up the sexual abuse, sexual advances, and mental problems of Johnson and many others.

45.     The purpose of this conspiracy was to prevent criminal prosecution, avoid adverse publicity, prevent claims for damages by the numerous minor victims, and to avoid exposure of this conspiracy to conceal the claims arising from the crimes of these Priests ordained by Defendant. Further, officials of the Defendant, in furtherance of the overall conspiracy alleged, engaged in affirmative acts to conceal the existence of this conspiracy. Further, this conspiracy concealed acts of fraud, breach of fiduciary duty, negligence, and gross negligence.

## EXEMPLARY DAMAGES

46.     The Diocese is liable in exemplary damages for harm resulting from Ortiz's criminal acts, because: (a) it acted with gross negligence in hiring, supervising, and retaining Ortiz, who was unfit to work as a priest or be around children; and (b) it employed Ortiz in a managerial capacity and Ortiz was acting within the scope of his employment.

47.     The Diocese is also liable for exemplary damages for gross negligence arising from the claims for intentional infliction of emotional distress; fraud; negligent hiring, retention, supervision, and

training; owner of premises; and premises liability support an award of exemplary damages.

48. The Diocese was grossly negligent because it's acts and/or omissions when viewed objectively from its standpoint at the time of the acts and/ or omissions involved (i) an extreme degree of risk, considering the probability and magnitude of potential harm to others; and (ii) were such that it had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

## FRAUDULENT CONCEALMENT, DURESS AND UNSOUND MIND

49. Members of the Diocese, the staff of Our Lady of Guadalupe, and St. Anne fraudulently concealed the conduct of Ortiz and allowed Plaintiffs to live in the rectory with Ortiz while the abuse was occurring.

50. Ortiz threatened Plaintiffs and they lived in fear of revealing what Ortiz did to them.

51. As a result of the years of abuse and threats suffered by Plaintiffs, they have suffered greatly and for years were of an unsound mind in the form of blocking out memories of the abuse.

52. The drugs and alcohol provided to the minor children by Ortiz also caused additional periods of unsound mind from and falling into major bouts of depression, alcohol, and drug use which kept one or both Plaintiffs from remembering the abuse suffered at Our Lady of Guadalupe and St. Anne.

53. The Diocese engaged in ongoing abuse in the form of exorcisms and continued to engage in exorcisms for many years to convince Plaintiffs the abuse came from a demonic possession and not from the Diocese or Ortiz, and the only remedy was to participate in exorcisms. During these exorcisms, Plaintiffs were strapped down and restrained to a bed and unable to move.

54. Plaintiff pleads that the statute of limitations is tolled due to duress, unsound mind, fraud, fraudulent concealment, conspiracy, equitable estoppel, and the discovery rule as stated herein.

## DAMAGES

55. As of further result of the abuse sustained by Plaintiffs, they have suffered severe personal injuries which resulted in damages in the following respects:

    A. Counseling/medical expenses incurred in the past;
    B. Counseling/medical expenses which, in reasonable probability, will be incurred in the future;
    C. Physical pain and suffering in the past;
    D. Physical pain and suffering which, in reasonable probability, will be suffered in the future;
    E. Mental anguish suffered in the past;
    F. Mental anguish which, in reasonably probability, will be suffered in the future; and
    G. Exemplary Damages.

56. As previously noted, Plaintiffs seek exemplary damages that will not be subject to damage caps pursuant to § 41.008 of the Texas Civil Practice and Remedies Code.

## RULE 193.7 NOTICE

57. Plaintiffs, in accordance with Rule 193.7 of the Texas Rules of Civil Procedure, files this Notice of Intention to Use Production Documents at Trial. Plaintiffs hereby gives notice that they intend to use at trial, or any pre-trial proceedings, all documents produced by Defendants in response to discovery.

## JURY DEMAND

58. Plaintiff hereby demands a trial by jury on all issues presented in this action pursuant to Rule 216 of the Texas Rules of Civil Procedure.

## REQUEST FOR DISCLOSURE

59. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants shall disclose, within 50 days of service of this request, the information or material described in Rule 194.2.

## U.S. LIFE TABLES

60. Notice is hereby given that Plaintiff intends to use the U.S. Life Tables as prepared by the Department of Health and Human Services.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Plaintiffs against Defendant, for damages in an amount within the jurisdictional limits of the Court; together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest, costs of court; and such further relief to which Plaintiffs may be entitled at law or in equity.

Respectfully submitted,

By: _____

**Law Office of Darren Wolf, P.C.**
Darren Wolf
Texas Bar No. 24072430
Darren@darrenwolf.com
1701 N. Market Street, Suite 210
Dallas, Texas 75202
Phone (214) 346 5355
Fax. (214) 346 5909


**Forester Haynie PLLC**
J. Forester
Texas Bar No. 24087532
D. Matthew Haynie
Texas Bar No. 24087692
1701 N. Market Street, Suite 210
Dallas, Texas  75202
Phone (214) 210-2100
Fax. (214) 346-5909
jay@foresterhaynie.com
matthew@foresterhaynie.com

*Attorneys for Plaintiffs*